In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00039-CV


______________________________




PHILLIP RODNEY NICHOLS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Hopkins County, Texas


Trial Court No. 0518262




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Phillip Rodney Nichols appeals from the trial court's order garnishing his inmate trust fund
for payment of court costs. The order was signed April 3, 2006. Nichols did not file a motion for
new trial. His notice of appeal was filed March 12, 2007.

 According to Rule 26.1, Nichols had thirty days after the day the order was signed to file a
notice of appeal. See Tex. R. App. P. 26.1. Therefore, Nichols had until May 3, 2006, to file a
notice of appeal. Hence, this appeal is untimely and we are without jurisdiction to hear this case.

 We dismiss this appeal for want of jurisdiction. 


 Bailey C. Moseley

 Justice


Date Submitted: March 20, 2007

Date Decided: March 21, 2007




N, INDIVIDUALLY, Appellants
 
V.
 
JOSEPH T. TRETTA, D.O., Appellee


                                              

On Appeal from the 276th Judicial District Court
Titus County, Texas
Trial Court No. 29692


                                                 



Before Ross, Carter, and Cornelius,* JJ.
Opinion by Justice Cornelius
*William J. Cornelius, C.J., Retired, Sitting by Assignment


O P I N I O N

          This is a suit by Joseph T. Tretta, D.O., against Titus Regional Medical Center and
Steve Jacobson, individually. In his amended petition, Tretta raised numerous claims
sounding in tort, breach of contract, defamation, conspiracy, and statutory violations that
allegedly damaged his professional and personal reputation, his business, and his
prospects for future employment. The principal basis for Tretta's suit was his allegation
that, when one of his patients died after he performed endoscopic sinus surgery on her,
Jacobson and the Hospital set out to damage Tretta's professional practice and reputation
and force him to leave the hospital through a conspiracy to improperly investigate him for
professional incompetence, and falsely report to the National Practitioner Data Bank
(NPDB) that he resigned from the Hospital while he was being investigated.
          Jacobson and the Hospital filed motions to dismiss and a motion for summary
judgment based on claims that Jacobson was entitled to official immunity as to all claims
against him, and the Hospital was entitled to sovereign immunity from both suit and liability
as to contractual claims against it. The trial court granted the motion for summary
judgment and plea to dismiss sustaining Jacobson's claim of official immunity as to the tort
claims, but denied the motion and plea as to all other claims. The trial court denied the
Hospital's motion for summary judgment for sovereign immunity on the contract,
declaratory, and injunctive relief claims. Both Jacobson and the Hospital appeal pursuant
to Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5), (8) (Vernon Supp. 2005).
          We reverse the trial court's order denying Jacobson's motion for summary judgment
as to all claims other than tort claims, and affirm the trial court's judgment insofar as it
grants Jacobson judgment on the tort claims, and we affirm the trial court's denial of the
Hospital's motion for summary judgment on the contract, declaratory, and injunctive relief
claims.
          When a defendant moves for summary judgment on the basis of an affirmative
defense such as immunity, the defendant must prove by competent summary judgment
evidence each element of the defense as a matter of law. City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994); Montgomery v. Kennedy, 669 S.W.2d 309, 310–11
(Tex. 1984).
          Official immunity is an affirmative defense that protects an officer or employee of
a governmental entity from liability when that officer or employee (1) acts in the scope of
his employment, (2) performs discretionary duties, and (3) acts in good faith. Univ. of
Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000); Wadewitz v. Montgomery, 951 S.W.2d
464, 466 (Tex. 1997); Johnson v. Campbell, 142 S.W.3d 592, 594 (Tex. App.—Texarkana
2004, pet. denied). If the officer or employee acts within the scope of his authority in the
performance of discretionary duties and acts in good faith, he is entitled to official immunity
even though his acts are negligent or against the governmental entity's regulations or
policy. City of Lancaster v. Chambers, 883 S.W.2d at 655; Johnson v. Campbell, 142
S.W.3d at 594.
          Sovereign immunity has two components: (1) immunity from suit, and (2) immunity
from liability. Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 853–54
(Tex. 2002); Longview Indep. Sch. Dist. v. Vibra-Whirl, Ltd., 169 S.W.3d 511, 513 (Tex.
App.—Texarkana 2005, no pet.). Generally, the State's immunity from liability is waived
when the State enters into a contract with a private party or entity. Fed. Sign v. Tex. S.
Univ., 951 S.W.2d 401, 405 (Tex. 1997). The State is amenable to suit if it waives its
immunity from suit by giving express consent to the suit. Longview Indep. Sch. Dist. v.
Vibra-Whirl, Ltd., 169 S.W.3d at 513.
          In considering whether Jacobson's summary judgment evidence conclusively proved
he is entitled to official immunity, we first determine if he, as chief executive officer (CEO)
and administrator of the Hospital, is entitled to official immunity if he is otherwise qualified. 
The summary judgment evidence shows that the Hospital is a governmental entity, but it
also shows that Jacobson was not an employee of the Hospital. Instead, he was an
employee of Quorum, a hospital staffing company that by contract provided him to the
Hospital as CEO and administrator. Tretta contends that, because Jacobson was not an
employee of the Hospital, he is not entitled to official immunity. We disagree. The majority
rule, and we think the better rule, is that official immunity does extend to a private party
acting pursuant to a contract with a governmental entity as an official fulfilling statutorily
mandated functions. Guerrero v. Tarrant County Mortician Servs., 977 S.W.2d 829, 832
(Tex. App.—Fort Worth 1998, pet. denied); Knowles v. City of Granbury, 953 S.W.2d 19,
24 (Tex. App.—Fort Worth 1997, writ denied); Putthoff v. Ancrum, 934 S.W.2d 164,
169–73 (Tex. App.—Fort Worth 1996, writ denied). To deny official immunity to a person
in such circumstances would, in the words of the court in De Vargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 722 (10th Cir. 1988), place defendants "between Scylla
and Charybdis—potentially liable either to plaintiffs for obeying the contract, or to
governmental bodies for breaching it." Other federal cases support this majority rule. See
Eagon v. City of Elk City, Okla., 72 F.3d 1480, 1489–90 (10th Cir. 1996); Williams v.
O'Leary, 55 F.3d 320, 323–24 (7th Cir. 1995); Sherman v. Four County Counseling Ctr.,
987 F.2d 397 (7th Cir. 1993); Frazier v. Bailey, 957 F.2d 920, 928–29 (1st Cir. 1992);
Citrano v. Allen Correctional Ctr., 891 F.Supp. 312, 315–20 (W.D. La. 1995). Tretta relies
on our case of GAB Bus. Servs. v. Moore, 829 S.W.2d 345 (Tex. App.—Texarkana 1992,
no writ), for a contrary holding. That case, however, is distinguishable. As we noted in our
opinion in that case, GAB was a private company providing insurance adjusting services
to the State Risk Pool. We noted that GAB was not the agent of the Risk Pool; GAB was
not performing uniquely governmental services, but was merely acting as a private adjuster
would; and GAB did not act in good faith. The summary judgment evidence here
conclusively shows that Jacobson, as the duly appointed CEO and administrator for the
Hospital, is entitled to official immunity if his acts meet the other criteria for official
immunity.
          We now determine if the summary judgment evidence conclusively shows that
Jacobson was acting within the scope of his authority and performing discretionary duties
in good faith.
          A person acts within the scope of his authority if he is discharging the duties
assigned to him. The fact that an act that forms the basis of a suit was performed
improperly or negligently does not take it outside the actor's scope of authority. City of
Lancaster v. Chambers, 883 S.W.2d at 658 & n.9.
          If a duty involves personal deliberation, decision, and judgment, it is a discretionary
duty. Acts that require specific obedience to orders that must be performed with such
precision and certainty that nothing is left to the exercise of discretion or judgment, are
ministerial. Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex. 1994); City of Lancaster v. Chambers,
883 S.W.2d at 653–54; Putthoff v. Ancrum, 934 S.W.2d at 170. Mandatory language in
a statute or policy does not, of itself, make an act ministerial. Eakle v. Tex. Dep't of Human
Servs., 815 S.W.2d 869, 876 (Tex. App.—Austin 1991, writ denied); Austin v. Hale, 711
S.W.2d 64 (Tex. App.—Waco 1986, no pet.). Executives and supervisors of State entities
have uniquely discretionary authority. Lowrey v. Univ. of Tex. Med. Branch, 837 S.W.2d
171, 176 (Tex. App.—El Paso 1992, writ denied); Lazaro v. Univ. of Tex. Health Sci. Ctr.,
830 S.W.2d 330, 332 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Professionals
who conduct or supervise investigations for State entities are performing discretionary acts. 
Heikkila v. Harris County, 973 S.W.2d 333, 336 (Tex. App.—Tyler 1998, pet. denied).
          Jacobson was the CEO and administrator of the Hospital. The Texas Legislature's
Act creating the Titus Regional Hospital District provides that the CEO and administrator
shall perform all duties required of him by the Board and "shall supervise all of the work
and activities of the district, and have general direction of the affairs of the District, within
such limitations as may be prescribed by the Board." The Board of Managers' By-Laws
contain exactly the same language defining the CEO's authority. The CEO is an ex-officio
member of all medical committees of the Hospital. He is responsible for preparing the
agenda for the committee meetings, giving notice to all persons who may be asked or
permitted to appear at such meetings, and providing the committee members with
whatever evidence and records they may need in their meetings. The CEO attends most
committee meetings, but does not vote. He makes periodic reports to the Board and
prepares the budget for the District. He is the supervisor of all of the Hospital's employees,
and has the authority to hire and terminate any employee for good cause, reporting such
action to the Board. Jacobson had the authority and duty to make, and did make, all
reports to federal and state authorities, including the NPDB, about the medical services
and affairs of the Hospital, and was the Hospital's official representative for that purpose. 
Tretta testified in his deposition that "everything" had to "go through" Jacobson, and that
Jacobson sat in on every committee meeting and he made all the decisions. The By-Laws
of the Board of Managers provides that no information relating to a "sentinel event"


 may
be released by anyone except the CEO following consultation with the Board. One of
Jacobson's acts that Tretta alleges as a part of Jacobson's conspiracy to damage him is
Jacobson's unilateral action in suspending all endoscopic sinus surgeries at the Hospital
after Ms. Mary Woods died following surgery performed by Tretta. Jacobson, in his
deposition, stated he made the decision to suspend all of those surgeries in order to
ensure patient safety until a thorough investigation could be made. This decision by
Jacobson obviously was a discretionary act in connection with his general supervisory
authority over all of the operations and activities of the Hospital.
          The summary judgment evidence conclusively proves that Jacobson was acting in
the scope of his authority and was performing discretionary duties at the time and on the
occasions relevant to this action.
          The summary judgment evidence also conclusively proves that Jacobson was acting
in good faith when he took the actions on which this suit is based. There is competent
summary judgment evidence that other reasonable hospital administrators in Jacobson's
position could have reasonably believed that the actions, reports, and statements made
by Jacobson were justified. That is the test for good faith in the context of an official
immunity claim. City of Lancaster v. Chambers, 883 S.W.2d at 657; Johnson v. Campbell,
142 S.W.3d at 594. The test is an objective one. To avoid summary judgment on the
issue of good faith, Tretta must have produced objective summary judgment evidence from
a qualified witness who, after reviewing the facts, concludes that no reasonable person in
Jacobson's position could have believed Jacobson's actions were justified. There is no
summary judgment evidence to that effect in this record.
          Tretta argues there is summary judgment evidence that Jacobson disliked him and
deliberately tried to prejudice his position and future at the Hospital. But probative
evidence on good faith is limited to objective evidence. Good faith in official immunity
cases must be measured against a standard of objective legal reasonableness, without
regard to the official's subjective state of mind. Ballantyne v. Champion Builders, Inc., 144
S.W.3d 417, 427 (Tex. 2004); Wadewitz v. Montgomery, 951 S.W.2d at 466.
          The trial court properly denied the Hospital's motion for summary judgment on the
basis of sovereign immunity. When a governmental entity enters into a contract with a
private person or private entity, it waives its immunity from liability as to claims arising
under or pertaining to that contract. Fed. Sign v. Tex. S. Univ., 951 S.W.2d at 405. The
Hospital here contracted with Tretta with respect to his services at the Hospital, so it has
no sovereign immunity from claims pertaining to that contract.


 See Longview Indep. Sch.
Dist. v. Vibra-Whirl, Ltd., 169 S.W.3d at 513. The Hospital is not entitled to immunity from
suit, because the Legislature's Act creating the Hospital District provides that the Hospital's
Board of Managers shall have the power and authority to "sue and be sued." Immunity
from suit against a State entity may be waived only if the State has expressly given its
consent to be sued. The Texas Supreme Court held in Missouri Pac. R.R. Co. v.
Brownsville Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970), that statutory language
providing that a State entity may "sue and be sued" gives consent to suit and expressly
waives the State's immunity from suit. We have followed the Missouri Pacific case in
Longview Indep. Sch. Dist. v. Vibra-Whirl, Ltd., 169 S.W.3d 511; S. Disposal, Inc. v. City
of Blossom, 165 S.W.3d 887, 892 n.4 (Tex. App.—Texarkana 2005, no pet.); and City of
Texarkana v. City of New Boston, 141 S.W.3d 778, 786–87 (Tex. App.—Texarkana 2004,
pet. filed). Some courts have held otherwise, but we choose to continue to follow the
Texas Supreme Court decision in Missouri Pacific. We therefore conclude that the
summary judgment evidence here shows that the Hospital is not entitled to sovereign
immunity either from suit or liability as to claims pertaining to its contract with Tretta.
          Jacobson and the Hospital also contend the trial court erred in overruling their
objections numbers 12 and 13 to Tretta's summary judgment evidence. The objections
were to allegedly hearsay statements made by Carol Ann Robinson that were repeated by
Tretta in his deposition. Robinson was Chief of Medical Records at the Hospital. 
Consequently, her statements were not hearsay. Tex. R. Evid. 801(e)(2)(D).
          For the reasons stated, we affirm the trial court's order granting Jacobson and the
Hospital's motion for summary judgment as to Tretta's tort claims, and we affirm the trial
court's order denying the Hospital's motion for summary judgment as to contract,
declaratory, and injunctive relief. We reverse the trial court's order denying Jacobson and
the Hospital's motion for summary judgment on all remaining claims, and here render
summary judgment for Jacobson and the Hospital on all claims based on Jacobson's
individual liability. 
 
                                                                           William J. Cornelius
                                                                           Justice*

Date Submitted:      October 19, 2005
Date Decided:         November 21, 2005

*Chief Justice, Retired, Sitting by Assignment