**TITUS REGIONAL MEDICAL CENTER and Steve Jacobson, Individually, Appellants,**

v.

**Joseph T. TRETTA, D.O., Appellee.**

No. 06–05–00060–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 19, 2005.

Decided Nov. 21, 2005.

A. Craig Carter, Davis & Davis, PC, Austin, for appellants.

Donald H. Flanary, Jr., Ricardo Ortiz, The Flanary Group, Dallas, for appellee.

Before ROSS, CARTER, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS.

This is a suit by Joseph T. Tretta, D.O., against Titus Regional Medical Center and Steve Jacobson, individually. In his amended petition, Tretta raised numerous claims sounding in tort, breach of contract, defamation, conspiracy, and statutory violations that allegedly damaged his professional and personal reputation, his business, and his prospects for future employment. The principal basis for Tretta's suit was his allegation that, when one of his patients died after he performed endoscopic sinus surgery on her, Jacobson and the Hospital set out to damage Tretta's professional practice and reputation and force him to leave the hospital through a conspiracy to improperly investigate him for professional incompetence, and falsely report to the National Practitioner Data Bank (NPDB) that he resigned from the Hospital while he was being investigated.

Jacobson and the Hospital filed motions to dismiss and a motion for summary judgment based on claims that Jacobson was entitled to official immunity as to all claims against him, and the Hospital was entitled to sovereign immunity from both suit and liability as to contractual claims against it. The trial court granted the motion for summary judgment and plea to dismiss sustaining Jacobson's claim of official immunity as to the tort claims, but denied the motion and plea as to all other claims. The trial court denied the Hospital's motion for summary judgment for sovereign immunity on the contract, declaratory, and injunctive relief claims. Both Jacobson and the Hospital appeal pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5), (8) (Vernon Supp.2005).

We reverse the trial court's order denying Jacobson's motion for summary judgment as to all claims other than tort claims, and affirm the trial court's judgment insofar as it grants Jacobson judgment on the tort claims, and we affirm the trial court's denial of the Hospital's motion for summary judgment on the contract, declaratory, and injunctive relief claims.

When a defendant moves for summary judgment on the basis of an affirmative defense such as immunity, the defendant must prove by competent summary judgment evidence each element of the defense as a matter of law. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

Official immunity is an affirmative defense that protects an officer or employee of a governmental entity from liability when that officer or employee (1) acts in the scope of his employment, (2) performs discretionary duties, and (3) acts in good faith. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997); *Johnson v. Campbell*, 142 S.W.3d 592, 594 (Tex.App.-Texarkana 2004, pet.

* William J. Cornelius, C.J., Retired, Sitting by    Assignment

denied). If the officer or employee acts within the scope of his authority in the performance of discretionary duties and acts in good faith, he is entitled to official immunity even though his acts are negligent or against the governmental entity's regulations or policy. *City of Lancaster v. Chambers*, 883 S.W.2d at 655; *Johnson v. Campbell*, 142 S.W.3d at 594.

■ Sovereign immunity has two components: (1) immunity from suit, and (2) immunity from liability. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853–54 (Tex.2002); *Longview Indep. Sch. Dist. v. Vibra–Whirl, Ltd.*, 169 S.W.3d 511, 513 (Tex.App.-Texarkana 2005, no pet.). Generally, the State's immunity from liability is waived when the State enters into a contract with a private party or entity. *Federal Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). The State is amenable to suit if it waives its immunity from suit by giving express consent to the suit. *Longview Indep. Sch. Dist. v. Vibra–Whirl, Ltd.*, 169 S.W.3d at 513.

■ In considering whether Jacobson's summary judgment evidence conclusively proved he is entitled to official immunity, we first determine if he, as chief executive officer (CEO) and administrator of the Hospital, is entitled to official immunity if he is otherwise qualified. The summary judgment evidence shows that the Hospital is a governmental entity, but it also shows that Jacobson was not an employee of the Hospital. Instead, he was an employee of Quorum, a hospital staffing company that by contract provided him to the Hospital as CEO and administrator. Tretta contends that, because Jacobson was not an employee of the Hospital, he is not entitled to official immunity. We disagree. The majority rule, and we think the better rule, is that official immunity does extend to a private party acting pursuant to a contract with a governmental entity as an official fulfilling statutorily mandated functions. *Guerrero v. Tarrant County Mortician Servs.*, 977 S.W.2d 829, 832 (Tex.App.-Fort Worth 1998, pet. denied); *Knowles v. City of Granbury*, 953 S.W.2d 19, 24 (Tex.App.-Fort Worth 1997, writ denied); *Putthoff v. Ancrum*, 934 S.W.2d 164, 169–73 (Tex. App.-Fort Worth 1996, writ denied). To deny official immunity to a person in such circumstances would, in the words of the court in *De Vargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 722 (10th Cir.1988), place defendants "between Scylla and Charybdis—potentially liable either to plaintiffs for obeying the contract, or to governmental bodies for breaching it." Other federal cases support this majority rule. *See Eagon v. City of Elk City, Okla.*, 72 F.3d 1480, 1489–90 (10th Cir.1996); *Williams v. O'Leary*, 55 F.3d 320, 323–24 (7th Cir.1995); *Sherman v. Four County Counseling Ctr.*, 987 F.2d 397 (7th Cir. 1993); *Frazier v. Bailey*, 957 F.2d 920, 928–29 (1st Cir.1992); *Citrano v. Allen Correctional Ctr.*, 891 F.Supp. 312, 315–20 (W.D.La.1995). Tretta relies on our case of *GAB Bus. Servs. v. Moore*, 829 S.W.2d 345 (Tex.App.-Texarkana 1992, no writ), for a contrary holding. That case, however, is distinguishable. As we noted in our opinion in that case, GAB was a private company providing insurance adjusting services to the State Risk Pool. We noted that GAB was not the agent of the Risk Pool; GAB was not performing uniquely governmental services, but was merely acting as a private adjuster would; and GAB did not act in good faith. The summary judgment evidence here conclusively shows that Jacobson, as the duly appointed CEO and administrator for the Hospital, is entitled to official immunity if his acts meet the other criteria for official immunity.

We now determine if the summary judgment evidence conclusively shows that Jacobson was acting within the scope of his authority and performing discretionary duties in good faith.

█ A person acts within the scope of his authority if he is discharging the duties assigned to him. The fact that an act that forms the basis of a suit was performed improperly or negligently does not take it outside the actor's scope of authority. *City of Lancaster v. Chambers*, 883 S.W.2d at 658 & n. 9.

█ If a duty involves personal deliberation, decision, and judgment, it is a discretionary duty. Acts that require specific obedience to orders that must be performed with such precision and certainty that nothing is left to the exercise of discretion or judgment, are ministerial. *Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex.1994); *City of Lancaster v. Chambers*, 883 S.W.2d at 653–54; *Putthoff v. Ancrum*, 934 S.W.2d at 170. Mandatory language in a statute or policy does not, of itself, make an act ministerial. *Eakle v. Tex. Dep't of Human Servs.*, 815 S.W.2d 869, 876 (Tex.App.-Austin 1991, writ denied); *Austin v. Hale*, 711 S.W.2d 64 (Tex.App.-Waco 1986, no pet.). Executives and supervisors of State entities have uniquely discretionary authority. *Lowrey v. Univ. of Tex. Med. Branch*, 837 S.W.2d 171, 176 (Tex.App.-El Paso 1992, writ denied); *Lazaro v. Univ. of Tex. Health Sci. Ctr.*, 830 S.W.2d 330, 332 (Tex.App.-Houston [14th Dist.] 1992, writ denied). Professionals who conduct or supervise investigations for State entities are performing discretionary acts. *Heikkila v. Harris County*, 973 S.W.2d 333, 336 (Tex.App.-Tyler 1998, pet. denied).

█ Jacobson was the CEO and administrator of the Hospital. The Texas Legislature's Act creating the Titus Regional Hospital District provides that the CEO and administrator shall perform all duties required of him by the Board and "shall supervise all of the work and activities of the district, and have general direction of the affairs of the District, within such limitations as may be prescribed by the Board." The Board of Managers' By-Laws contain exactly the same language defining the CEO's authority. The CEO is an ex-officio member of all medical committees of the Hospital. He is responsible for preparing the agenda for the committee meetings, giving notice to all persons who may be asked or permitted to appear at such meetings, and providing the committee members with whatever evidence and records they may need in their meetings. The CEO attends most committee meetings, but does not vote. He makes periodic reports to the Board and prepares the budget for the District. He is the supervisor of all of the Hospital's employees, and has the authority to hire and terminate any employee for good cause, reporting such action to the Board. Jacobson had the authority and duty to make, and did make, all reports to federal and state authorities, including the NPDB, about the medical services and affairs of the Hospital, and was the Hospital's official representative for that purpose. Tretta testified in his deposition that "everything" had to "go through" Jacobson, and that Jacobson sat in on every committee meeting and he made all the decisions. The By-Laws of the Board of Managers provides that no information relating to a "sentinel event" [1] may be released by anyone except the CEO following consultation with the Board. One of Jacobson's acts that Tretta alleges as a part of Jacobson's conspiracy to damage him is Jacobson's unilateral action in suspending all endo-

---

1. A "sentinel event" is the death of a patient.

scopic sinus surgeries at the Hospital after Ms. Mary Woods died following surgery performed by Tretta. Jacobson, in his deposition, stated he made the decision to suspend all of those surgeries in order to ensure patient safety until a thorough investigation could be made. This decision by Jacobson obviously was a discretionary act in connection with his general supervisory authority over all of the operations and activities of the Hospital.

The summary judgment evidence conclusively proves that Jacobson was acting in the scope of his authority and was performing discretionary duties at the time and on the occasions relevant to this action.

The summary judgment evidence also conclusively proves that Jacobson was acting in good faith when he took the actions on which this suit is based. There is competent summary judgment evidence that other reasonable hospital administrators in Jacobson's position could have reasonably believed that the actions, reports, and statements made by Jacobson were justified. That is the test for good faith in the context of an official immunity claim. *City of Lancaster v. Chambers,* 883 S.W.2d at 657; *Johnson v. Campbell,* 142 S.W.3d at 594. The test is an objective one. To avoid summary judgment on the issue of good faith, Tretta must have produced objective summary judgment evidence from a qualified witness who, after reviewing the facts, concludes that no reasonable person in Jacobson's position could have believed Jacobson's actions were justified. There is no summary judgment evidence to that effect in this record.

■■■ Tretta argues there is summary judgment evidence that Jacobson disliked him and deliberately tried to prejudice his position and future at the Hospital. But probative evidence on good faith is limited to objective evidence. Good faith in official immunity cases must be measured against a standard of objective legal reasonableness, without regard to the official's subjective state of mind. *Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 427 (Tex.2004); *Wadewitz v. Montgomery,* 951 S.W.2d at 466.

■■■ The trial court properly denied the Hospital's motion for summary judgment on the basis of sovereign immunity. When a governmental entity enters into a contract with a private person or private entity, it waives its immunity from liability as to claims arising under or pertaining to that contract. *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d at 405. The Hospital here contracted with Tretta with respect to his services at the Hospital, so it has no sovereign immunity from claims pertaining to that contract.[2] *See Longview Indep. Sch. Dist. v. Vibra–Whirl, Ltd.,* 169 S.W.3d at 513. The Hospital is not entitled to immunity from suit, because the Legislature's Act creating the Hospital District provides that the Hospital's Board of Managers shall have the power and authority to "sue and be sued." Immunity from suit against a State entity may be waived only if the State has expressly given its consent to be sued. The Texas Supreme Court held in *Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970), that statutory language providing that a State entity may "sue and be sued" gives consent to suit and expressly waives the State's immunity from suit. We have followed the *Missouri Pacific* case in *Longview Indep. Sch. Dist. v. Vibra–Whirl, Ltd.,* 169 S.W.3d 511; *Southern Disposal, Inc. v. City of Blossom,* 165 S.W.3d 887, 892 n. 4 (Tex.App.-Texarkana

---

**2.** Tretta's contract with the Hospital was dated before August 30, 1999, so TEX. GOV'T CODE ANN. § 2260.005 (Vernon Supp.2005) does not apply.

2005, no pet.); and *City of Texarkana v. City of New Boston,* 141 S.W.3d 778, 786–87 (Tex.App.-Texarkana 2004, pet. filed). Some courts have held otherwise, but we choose to continue to follow the Texas Supreme Court decision in *Missouri Pacific.* We therefore conclude that the summary judgment evidence here shows that the Hospital is not entitled to sovereign immunity either from suit or liability as to claims pertaining to its contract with Tretta.

Jacobson and the Hospital also contend the trial court erred in overruling their objections numbers 12 and 13 to Tretta's summary judgment evidence. The objections were to allegedly hearsay statements made by Carol Ann Robinson that were repeated by Tretta in his deposition. Robinson was Chief of Medical Records at the Hospital. Consequently, her statements were not hearsay. TEX.R. EVID. 801(e)(2)(D).

For the reasons stated, we affirm the trial court's order granting Jacobson and the Hospital's motion for summary judgment as to Tretta's tort claims, and we affirm the trial court's order denying the Hospital's motion for summary judgment as to contract, declaratory, and injunctive relief. We reverse the trial court's order denying Jacobson and the Hospital's motion for summary judgment on all remaining claims, and here render summary judgment for Jacobson and the Hospital on all claims based on Jacobson's individual liability.